125 F.3d 858
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Patrick EARTHLY, an individual; Audrey Bowen, as Guardian
ad Litem for Jerry Lafayette, a minor; Yolanda Nash, as
Guardian ad Litem for Brandon and Brent Nash, minors;
Cheryl Jones, as Guardian ad Litem for Moacir Jones, a
minor, Ralph Jones, as Guardian ad Litem for Moacir Jones, a
minor; Jayne Somogy, as Guardian ad Litem for Jomo
Kenyatta, a minor; Richard v. Hill, an individual; Andrea
Hill, an individual, Plaintiffs-Appellees-Cross-Appellants,
v.
CITY OF BEVERLY HILLS; Allan L. Alexander, City of Beverly
Hills Mayor and City Council Member, individually and in his
official capacity; Vicki Reynolds, City of Beverly Hills
City Council Member, individually and in her official
capacity, Defendants-Cross-Appellees, and Marvin Iannone,
City of Beverly Hills Chief of Police, individually and in
his official capacity; Robert P. Curtis, individually and
in his official capacity, Defendants-Appellants.
 Nos. 96-55588, 96-55884.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 8, 1997.
Decided Oct. 10, 1997.
 
 Appeal from the United States District Court for the Central District of California, D.C. No. CV-95-07938-WDK
 Before HALL and T.G. NELSON, C.J.'s, and WINMILL, D.J.**
 MEMORANDUM*
 Patrick Earthly, Jerry Lafayette, Brandon Nash, Brent Nash, Moacir Jones, Jomo Kenyatta, Richard V. Hill and Andrea Hill (collectively the "plaintiffs"), bring this 42 U.S.C. § 1983 civil rights action against various City of Beverly Hills officials (collectively the "defendants") alleging that the defendants' failure to adequately supervise, train and investigate subordinate police officers resulted in illegal and racially motivated traffic stops. Marvin Iannone, Chief of the Beverly Hills Police Department ("BHPD"), and Beverly Hills Police Captain Robert P. Curtis (collectively the "police supervisors") appeal the district court's interlocutory order denying their motion for summary judgment based on qualified immunity. The plaintiffs, in turn, obtained certification pursuant to Federal Rule of Civil Procedure 54(b) to cross appeal the district court's decision to grant summary judgment in favor of Beverly Hills City Council members Allan Alexander and Vicki Reynolds (collectively the "council members"). We review summary judgment determinations de novo. Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993). We reverse the denial of the police supervisors' motion for summary judgment and affirm the judgment in favor of the council members.
 I.
 Where, as here, supervisory liability is predicated on the alleged unconstitutional actions of a subordinate, the theory of liability cannot rest on respondeat superior. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989). However, an official who has failed to prevent a constitutional violation, by inadequately training, supervising or investigating his subordinates, may be liable under § 1983 if the plaintiff shows 1) the supervisor possessed the requisite culpable state of mind, and 2) a causal connection between the supervisor's action or inaction and the infliction of the alleged constitutional harm.[1] See. e.g., Redman v. County of San Diego, 942 F.2d 1435, 1446-47 (9th Cir.1991) (en banc), cert. denied, 502 U.S. 1074 (1992); Sanders. Kennedy, 794 F.2d 478, 483 (9th Cir.1986). The parties agree that culpability is established by showing a supervisor was deliberately indifferent to "acts by others which the [supervisor] knows or reasonably should know would cause others to inflict the constitutional injury." Redman, 942 F.2d at 1447. When applied to determine the culpability of a supervisor who "failed to act to prevent" a constitutional injury, the deliberate indifference standard is objective in nature. See Redman, 942 F.2d at 1447 (focusing on the supervisor's actions in relation to what the supervisor "knew or reasonably should have known").
 In the district court, the individual defendants based their motion for summary judgment on the protection provided by the qualified immunity doctrine. The determination of whether a law enforcement officer is entitled to qualified immunity involves a two step analysis. In the first step the court "must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred." Perkins v. City of West Covina, 113 F.3d 1004, 1008 (9th Cir.1997). Second, the court must consider "whether, under that clearly established law, a reasonable officer could have believed the conduct was lawful." Id.
 The parties do not dispute that at the time of the incidents giving rise to this § 1983 action, clearly established law proscribed traffic stops unsupported by reasonable suspicion. See Terry v. Ohio, 392 U.S. 1 (1968). Similarly, all parties acknowledge that a police officer could not legally stop a citizen on the basis of race. See Gonzales v. City of Peoria, 722 F.2d 468, 480 (9th Cir.1983). Lastly, the parties agree that a supervisor could not act with deliberate indifference to a plainly obvious risk of a constitutional violation. See Sanders, 794 F.2d at 483. Thus, the issue we are asked to resolve concerns the second step of the qualified immunity analysis.
 The second inquiry focuses on the "objective reasonableness of the official's conduct, as measured by reference to clearly established law." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In this respect, the issue regarding the "objective legal reasonableness" of the official's conduct coincides in large part with the substantive issue of whether the official's action or inaction constitutes deliberate indifference. "A finding of deliberate indifference necessarily precludes a finding of qualified immunity; ... officials who deliberately ignore [conduct that may violate the constitution] cannot claim that it was not apparent to a reasonable person that such actions violated the law." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir.1992) (emphasis in original); see also P.B. v. Koch, 96 F.3d 1298, 1301-04 (9th Cir.1996).
 II.
 A denial of qualified immunity on summary judgment is immediately appealable if the issue presented concerns an "abstract issue of law." Behrens v. Pelletier, 116 S.Ct. 834, 842 (1996). Here, the defendants' appeal is based on an issue that we may properly consider: whether "all of the evidence that the district court deemed sufficiently supported for purposes of summary judgment meets a standard of 'objective legal reasonableness.' " Koch, 96 F.3d at 1301.
 III.
 The record demonstrates that council members Alexander and Reynolds were aware of only two formal complaints, both filed by Mr. Earthly. The council members also received several letters from concerned citizens complaining about the treatment of Mr. Earthly in particular and racially motivated stops in general. Finally, we assume for the purposes of this appeal that the defendants were aware of City Manager Scott's misgivings regarding the official investigation of Mr. Earthly's first stop.[2] Given this knowledge, the council members did not act with deliberate indifference to the plaintiffs' constitutional rights.
 To the contrary, after Mr. Scott informed the council members of Mr. Earthly's first complaint, the results of the BHPD investigation, Rev. Anderson's concerns and, presumably, Mr. Scott's misgivings, the council members directed Mr. Scott to look into the matter further. Consequently, Mr. Scott rode along in BHPD patrol cars on two separate occasions, reviewed BHPD practices with defendant Iannone and met with Mr. Earthly and Ms. Williamson. This further inquiry into Mr. Earthly's first stop led Mr. Scott to conclude that "the BHPD does not condone the making of traffic or pedestrian stops on the basis of race, and the Department is committed to the protection of civil rights."
 In a similar manner, when faced with a second complaint from Mr. Earthly, the council members did more than merely rely on an official investigation by the BHPD. They directed Mr. Scott to ensure that the matter was throughly investigated. To this end, Mr. Scott separately interviewed the witnesses to the second stop and met with Rev. Anderson and Ms. Williamson. Thus, in each instance the council members took specific action to avoid the risk of constitutional injury: they not only reviewed the outcome of the BHPD investigations but initiated their own inquiry through the efforts of Mr. Scott.
 While the plaintiffs contend that the council members should have done more, "[i]n virtually every instance where a person has had his or her constitutional rights violated ..., a § 1983 plaintiff will be able to point to something the city [official] 'could have done' to prevent the unfortunate incident." City of Canton v. Harris, 489 U.S. 378, 392 (1989). However, the test for § 1983 liability is not based on a theory of "de facto respondeat superior " or an "endless exercise of second-guessing." Id. Instead, liability under § 1983 attaches only where the official acted with deliberate indifference to the constitutional rights of the plaintiffs. In this case, viewing the evidence in a light most favorable to the plaintiffs, a reasonable factfinder could not find that the council members acted with deliberate indifference. See, e.g., Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir.1995); Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir.), cert. denied, 513 U.S. 813, 814 (1994); Davis v. City of Ellensburg, 869 F.2d 1230, 1235 (9th Cir.1989); cf. Redman, 942 F.2d at 1447-48 (finding sufficient facts to support deliberate indifference where official knew or reasonably should have known of constitutional violations but took no action); Oviatt ex rel Waugh v. Pearce, 954 F.2d 1470, 1477-78 (9th Cir.1992) (same).
 For essentially the same reasons, the council members are entitled to qualified immunity. A reasonable city official could have believed that the steps taken in response to the two Earthly complaints satisfied clearly established legal standards. The council members' conduct satisfies the standard of "objective legal reasonableness." See, e.g., Harlow, 457 U.S. at 815-19; Shaw, 13 F.3d at 802-03. The district court properly entered summary judgment in favor of defendants Alexander and Reynolds.
 IV.
 It is undisputed that defendants Iannone and Curtis conducted the investigations of the plaintiffs' complaints in accordance with the procedures set forth in official BHPD policy handbooks. The plaintiffs also do not dispute that during the time-frame relevant to the alleged illegal stops defendants Iannone and Curtis provided for the training of subordinate officers in the proper standards for traffic and pedestrian stops. The plaintiffs' contend instead that the police suprevisors participated in "sham" investigations.
 Generally, a supervisor who reasonably relies on officially established procedures is entitled to qualified immunity. See, e.g., Grossman v. City of Portland, 33 F.3d 1200, 1209-10 & n. 20 (9th Cir.1994); Shaw, 13 F.3d at 801. There is nothing in the record showing that the number of complaints alleging racially motivated stops, or the number of letters received from concerned citizens, was so unusual that the defendants' failure to deviate from official procedures amounted to deliberate indifference. See Rizzo v. Goode, 423 U.S. 362, 375 (1976). Likewise, there is a lack of evidence demonstrating that the procedures followed by the defendants to train and investigate subordinates were unreasonable under the circumstances. Cf. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir.1991). Assuming that the police supervisors knew of Mr. Scott's misgivings regarding the investigation of Mr. Earthly's first complaint, the plaintiffs do not explain why this fact renders suspect the defendants' investigation and training of subordinate police officers.
 Each of the six investigations resulted in findings that were supported by the statements of the officers involved, or by third party witnesses, or both. Plaintiffs have not pointed to any inconsistencies or "holes" in the investigations that should have put a reasonable supervisor on notice that the investigations were a "sham." Cf. id. at 647. Furthermore, there is no evidence to indicate that BHPD investigations always resulted in the exoneration of the police officers being investigated; in at least two of the investigations that are part of this record the officer under review was found to have acted improperly in some regard. Cf. id.
 In sum, the police supervisors did not consciously disregard a plainly obvious risk that subordinate police officers were likely to cause the plaintiffs a constitutional injury. The defendants investigated each incident in accordance with standard operating procedures and provided continuous training on the proper standards for traffic and pedestrian stops. Viewed in a light most favorable to the plaintiffs, the record cannot reasonably support a finding that the defendant police supervisors acted with deliberate indifference. See, e.g., Mackinney, 69 F.3d at 1008; Shaw, 13 F.3d at 801; Merritt v. County of Los Angeles, 875 F.2d 765, 770 (9th Cir.1989); Davis, 869 F.2d at 1235.
 Similarly, defendants are entitled to qualified immunity. Under the circumstances, the police supervisors' actions in investigating and training subordinate officers were objectively legally reasonable. See, e.g., Shaw, 13 F.3d at 802-03. Therefore, the district court erred in denying the motion for summary judgment.
 CONCLUSION
 We reverse as to the council members and remand with instructions to enter summary judgment in favor of defendants Iannone and Curtis. We affirm the judgment for defendants Alexander and Reynolds.
 REVERSED in part, AFFIRMED in part and REMANDED.
 
 
 1
 Each party to bear their own costs.
 
 
 
 **
 The Honorable B. Lynn Winmill, District Judge of the District of Idaho, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 On appeal, the plaintiffs also purport to ground their § 1983 action on a violation of a "historic liberty interest" and a violation of procedural due process. Similarly, the plaintiffs attempt to transform their case from one grounded on a supervisor's failure to act, to one that is based, at least in part, on a supervisor's direct participation in the illegal conduct. These legal theories, however, were not asserted in the plaintiffs' complaint and were not argued before the district court. Accordingly, they are waived. See Brazil v. United States Dep't of Navy, 66 F.3d 193, 198-99 (9th Cir.1995), cert. denied, 116 S.Ct. 1317 (1996); Royal Ins. Co. v. Sea-Land Serv. Inc., 50 F.3d 723, 729 (9th Cir.1995)
 
 
 [2]
 Because it makes no difference to the resolution of the parties' appeals, we do not decide whether the district court abused its discretion in ruling that Mr. Scott's purported statements to Rev. Anderson were admissible under an exception to the hearsay rule