869 F.2d 1230
 Terry L. DAVIS, Administrator for the Estate of Ronald D.
Davis, Deceased; Terry L. Davis, Jacqueline D.
Davis, Individuals, Plaintiffs-Appellants,
v.
The CITY OF ELLENSBURG; Joseph K. Newbry; Michael A.
Delozier; William J. Hutton, Defendants-Appellees.
 No. 87-4245.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 5, 1988.
Decided March 1, 1989.
As Amended March 28, 1989.
 
 J. Adam Moore, Hoffman & Rowley, Yakima, Wash., Theodore Spearman, Sullivan & Golden, Seattle, Wash., for plaintiffs-appellants.
 Walter G. Meyer, Meyer & Fluegge, P.S., Yakima, Wash., for defendants-appellees.
 Appeal from the United States District Court for the Eastern District of Washington.
 Before FLETCHER, BOOCHEVER and TROTT, Circuit Judges.
 BOOCHEVER, Circuit Judge:
 
 
 1
 Terry L. Davis and Jacqueline D. Davis as individuals, and Terry L. Davis[1] as administrator of Ronald Davis' estate, appeal the district court's order granting summary judgment to the municipal defendant. The district court held Davis had failed to produce "significantly probative evidence" of the existence of a municipal policy or custom as required under 42 U.S.C. section 1983. Alternatively, the district court held the actions of the chief of police did not amount to gross negligence or reckless indifference. We affirm.
 
 FACTS
 
 2
 On June 10, 1984, Officer Newbry and Reserve Officer Delozier were on foot patrol in Ellensburg, Washington. They entered an alleyway and saw Ronald Davis standing next to a dumpster. As the officers got closer, they saw a "green leafy substance" on the dumpster cover. There is some dispute whether the officers said anything to Ronald Davis. The officers tripped Ronald to the ground, and tried to handcuff him. The officers succeeded in cuffing Ronald's right wrist, but they could not control his left hand. There is some dispute whether Ronald's left hand was near his mouth or stomach.
 
 
 3
 The officers called for backup assistance. Officer Hutton arrived five minutes later, and used a come along device ("the claw") to gain control of Ronald's left hand. Plaintiff alleges the policemen then searched the area for the marijuana, but did not check Ronald's condition until he began to retch or drool. Officer Hutton then called an ambulance. Paramedics used forceps to remove a baggie from Ronald's throat. It was later determined this baggie contained marijuana. Ronald suffered irreversible brain damage, and died three days later.
 
 
 4
 Officer Hutton joined the Ellensburg Police Department in 1979. Chief Loveless became concerned with Hutton's behavior, and was aware that Hutton physically abused his ex-wife on at least one occasion. In 1982, Chief Loveless sent Officer Hutton to see Dr. Shaw, the police psychologist. On August 8, 1982, Dr. Shaw wrote to the chief:
 
 
 5
 In accordance with your request, on this date I evaluated Officer William J. Hutton relative to his psychological competency to fulfill his duties as a police officer with the City of Ellensburg.
 
 
 6
 The results of this evaluation indicated no serious psychopathology and it appears he is technically competent to perform as a police officer.
 
 
 7
 There is, however, a significant area of concern which could pose a liability to both Officer Hutton and to the City of Ellensburg. This concern involves the frequent abuse of alcohol by Officer Hutton.
 
 
 8
 Dr. Shaw recommended that Officer Hutton be allowed to keep his job only on the condition that he abstain from all use of alcohol. Officer Hutton agreed to the recommendation, and a letter was placed in his file. Chief Loveless informally received reports from two officers who worked with Officer Hutton. The two officers told the Chief that Officer Hutton was no longer drinking.
 
 
 9
 Officer Newbry joined the Ellensburg Police Department in late 1982. Officer Newbry attended the Basic Law Enforcement Academy in Spokane, and graduated first in his class. The initial psychological report stated Newbry was competent to be a police officer.
 
 
 10
 In December 1983, Officer Newbry began to see doctors for some type of anxiety disorder.[2] In 1984, Chief Loveless sent Officer Newbry to see Dr. Shaw. In a letter dated February 14, 1984, Dr. Shaw wrote:
 
 
 11
 Officer Newbry was seen at the request of the Ellensburg Police Department because of his recent depression and decline in productivity.
 
 
 12
 It is my determination, Officer Newbry has had an adverse reaction to recent traumatic events including a suicide, which have resulted in his having doubts concerning his ability to perform as a law enforcement officer.This reaction is not that unusual for a person with the interpersonal sensitivity expressed by Officer Newbry.
 
 
 13
 He was offered re-assurance of his competency to continue as a police officer, however, he was given the name of a local psychologist should he continue to experience problems resulting from his sensitivity.
 
 
 14
 Dr. Shaw referred Officer Newbry to Dr. Solberg. Dr. Solberg classified Newbry's disorder as "[p]robable panic type reactions similar to what has been reported as a delayed stress reaction fashion in Viet Nam Vets, etc. Possibility of multi-factoral cause exacerbated by this being the wrong job for him, etc., in general, certainly needs to be explored."
 
 
 15
 Dr. Solberg also noted that "[g]radually over the last several mos. [Newbry] has had diminishment of the intensity of these feelings, as he has found that he has not lost control and has undertaken no actions that provided difficulty for him." This observation coincided with Dr. Horsley's observation of April 3, 1984. Dr. Horsley wrote "patient has had some feelings of being out of control again, but is in general feeling quite a bit better." It is undisputed that Chief Loveless never talked with Dr. Solberg about Officer Newbry's continued treatment, but the Chief received the psychologist bills and observed that Officer Newbry appeared to be doing well.
 
 PROCEEDINGS BELOW
 
 16
 On January 31, 1986, Davis sued Officer Newbry as an individual, and the City of Ellensburg under 42 U.S.C. section 1983. Davis amended the complaint to add Officers DeLozier and Hutton as individual defendants.
 
 
 17
 The district court granted the City of Ellensburg's motion for summary judgment. The district court held that Davis failed to produce "significantly probative" evidence regarding whether Officer Hutton's alleged alcohol problem, and Officer Newbry's alleged mental disorder caused or contributed to their actions. Also, the district court stated there was no evidence of recklessness, gross negligence or deliberate indifference in the City's training program. Last, the district court stated "plaintiffs have failed to come forward with "significantly probative evidence" of an existing municipal policy unconstitutional on its face (in which case a single incident would suffice) or a pattern of constitutional deprivations." The district court certified its decision as final for purposes of appeal. Fed.R.Civ.P. 54(b).
 
 
 18
 Davis filed a timely notice of appeal.
 
 DISCUSSION
 
 19
 Davis contends that the district court erred in granting the City of Ellensburg's motion for summary judgment. We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party to determine if there are any genuine issues of material fact and whether the district court correctly applied the substantive law. EEOC v. County of Orange, 837 F.2d 420, 421 (9th Cir.1988).
 
 
 20
 Municipal liability under section 1983 can only be imposed for injuries inflicted pursuant to an official government policy or custom. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Davis asserted four separate policies or customs: inadequate medical treatment of prisoners; inadequate training of officers; deliberate indifference to officers' use of unreasonable force; and inadequate supervision. Davis also argues that rank and file police officers in the city of Ellensburg were delegated the authority to establish municipal policy regarding the permissible amount of force to be used in misdemeanor arrests.
 
 
 21
 * Davis has failed to establish that there is a genuine issue of material fact regarding the existence of a policy of inadequate training, inadequate medical treatment of prisoners, or deliberate indifference to the use of excessive force. A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 2436-37, 85 L.Ed.2d 791 (1985) (plurality opinion); cf. Pembaur v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986) ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances.") (plurality opinion). In Tuttle, the Supreme Court reversed a jury verdict in favor of the plaintiff since a jury instruction allowed the jury to infer an official policy of inadequate training based on the police officer's alleged use of excessive force against plaintiff's decedent. Tuttle, 471 U.S. at 821, 105 S.Ct. at 2435. Municipalities cannot be held liable simply because they employ a tortfeasor. See Monell, 436 U.S. at 691, 98 S.Ct. at 2036. A jury finding of liability based solely on a police officer's isolated misbehavior would unduly threaten a municipality with respondeat superior liability. Tuttle, 471 U.S. at 831, 105 S.Ct. at 2036 (Brennan, J., concurring).
 
 
 22
 Davis failed to introduce any evidence to establish the existence of a policy or custom of inadequate medical treatment of prisoners other than the arrest and subsequent death of Ronald Davis. Similarly, Davis failed to present any evidence regarding the inadequacy of the training of the City's police officers.
 
 
 23
 Furthermore, Davis failed to present any probative evidence that the City acquiesced in the police officers' use of excessive force. Davis argued before the district court that the City's police officers used excessive force on prior occasions. The district court, however, stated that Davis presented scanty facts and little detail to substantiate these allegations, and Davis has not specified these alleged "events" in this appeal. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted).
 
 
 24
 The only evidence presented by Davis was the alleged unconstitutional actions of three low level police officers that resulted in Ronald Davis' death. Furthermore, Davis has presented no evidence of any action by a higher employee with policymaking authority sufficient to establish liability under Pembaur.
 
 II
 
 25
 Davis presents a novel argument that the City of Ellensburg's failure to have a written policy regarding the proper use of force in misdemeanor arrests amounted to a delegation of policymaking authority to rank and file police officers. He, in effect, contends that the absence of a written policy transforms individual police officers such as Hutton and Newbry into municipal policymakers whose decisions in individual cases may give rise to municipal liability. We reject this argument.
 
 
 26
 A single decision by an employee with authority to establish policy with respect to the subject matter of the decision is an act of official government policy and can thus give rise to municipal liability under section 1983. Pembaur, 475 U.S. at 480-81, 106 S.Ct. at 1298-99. On the other hand, a single act of a non-policymaking employee cannot give rise to municipal liability. Tuttle, 471 U.S. at 823-24, 105 S.Ct. at 2436-37 (plurality opinion). Thus, if Davis has not established that rank and file police officers were authorized policymakers with respect to the use of force in misdemeanor arrests, their single act cannot give rise to municipal liability.
 
 
 27
 The mere absence of a written policy is not sufficient to support an inference that policymaking authority has been delegated to the rank and file. Acceptance of Davis' argument would turn Pembaur into a giant loophole in the requirements enunciated in Tuttle, so that whenever there is no established policy, a municipality would be liable for the single decision of a non-policymaking employee.
 
 
 28
 We do not suggest that a municipality can never be liable in the absence of a written policy. In City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Supreme Court stated that "special difficulties" could arise when plaintiffs contend that a municipal policymaker delegated authority to another official. Praprotnik, 108 S.Ct. at 925 (citing Pembaur, 475 U.S. at 482-83, 106 S.Ct. at 1299-1300) (plurality opinion)). A plurality of the Supreme Court stated that:
 
 
 29
 First, whatever analysis is used to identify municipal policymakers, egregious attempts by local government to insulate themselves from liability for unconstitutional policies are precluded by a separate doctrine. Relying on the language of Sec. 1983, the Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a 'custom or usage' with the force of law".
 
 
 30
 Praprotnik, 108 S.Ct. at 925-26 (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)) (emphasis added).
 
 
 31
 In this case, however, Davis has failed to present any evidence of other acts by Ellensburg police officers to prove that the use of excessive force is a widespread practice or custom in the city. Thus, we can infer neither that the authority to make policy regarding the use of force in misdemeanor arrests had been delegated to individual field officers, nor that the use of excessive force is sufficiently pervasive to rise to the level of a custom of the City.
 
 
 32
 Because Davis has only presented evidence regarding a single act of non-policymaking employees, the municipality cannot be held liable on this basis.
 
 III
 
 33
 Davis also claims that the City had a policy or custom of inadequately supervising its police officers. To prevail Davis must establish that this policy caused a constitutional deprivation, namely Ronald Davis' death. See Hammond v. County of Madera, 859 F.2d 797, 801-803 (9th Cir.1988).
 
 
 34
 Davis has failed to raise a genuine issue of fact regarding a policy of inadequate supervision. Although it is now well settled that the mere negligence of a state official does not violate the due process clause of the fourteenth amendment, see Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986), a constitutional violation may arise from training or supervision where the training or supervision is sufficiently inadequate as to constitute "deliberate indifference" to the righrs of persons with whom the police come into contact. City of Canton v. Harris, --- U.S. ----, 109 S.Ct. 1197, 103 L.Ed.2d 412. Canton dealt specifically with inadequate training. We see no principled reason to apply a different standard to inadequate supervision.
 
 
 35
 Chief Loveless sent both officers to the police psychologist for evaluation. The Chief allowed both to remain on active duty only after receiving written reports from Dr. Shaw that both were competent to perform their duties. The Chief also received two informal reports that Officer Hutton was no longer drinking. Viewing the evidence in the light most favorable to Davis, we agree with the district court's conclusion that the evidence fails to establish that the Chief acted with deliberate indifference in failing to remove the two officers from active duty. Consequently, the City of Ellensburg is not liable under section 1983 for inadequate supervision. Accordingly, we need not decide whether there is a genuine issue regarding causation.
 
 
 36
 Consequently, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The plaintiffs jointly will be referred to as "Davis"
 
 
 [2]
 Apparently Officer Newbry was shot at during a prison disturbance, and was the first on the scene of a suicide in the same prison