Edward PALACIOS, et al., Plaintiffs,

v.

CITY OF OAKLAND, et al., Defendants.

No. C–96–1105 SI.

United States District Court,
N.D. California.

May 13, 1997.

Clifton C. Cooper, Jr., Cooper & Duvernay, Oakland, CA, for plaintiffs.

Evelio M. Grillo, San Francisco, CA, Claudia Leed, Randolph W. Hall, Asst. City Atty., Jayne W. Williams, Oakland City Atty. Office, Oakland, CA, for defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FEDERAL CLAIMS AND DISMISSING PLAINTIFFS' STATE CLAIMS WITHOUT PREJUDICE**

ILLSTON, District Judge.

On May 9, 1997, the Court heard argument on defendants' motion for summary judgment or partial summary judgment. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendants' motion for summary judgment on plaintiffs' claims pursuant to 42 U.S.C. § 1983 and DISMISSES WITHOUT PREJUDICE plaintiffs' state law claims.

## BACKGROUND

On November 22, 1995, Edward Palacios became intoxicated at his residence. Several members of his family were frightened by his behavior and his sister, Elva Palacios, called the police. Defs.' Statement of Uncontroverted Facts ("DSUF") #1.[1] Oakland Police Officers Monica Russo and Martin Hughes responded to the call, and when they arrived at the Palacios home at approximately 1:30 a.m. on November 23, 1995, Palacios appeared to be intoxicated. DSUF #2–3. The Palacios family asked Officers Russo and Hughes to remove Palacios from the home. DSUF #4. Palacios left the home accompanied by Russo and Hughes. Outside the home, Palacios walked towards Hughes' police car; there was a police dog seated in the back of the car. As Palacios walked towards the police car, the dog in the car barked and lunged at Palacios. DSUF #6. Officer Hughes stepped in between Palacios and the dog, and pushed Palacios once in the chest away from the vehicle. *Id.* Palacios stumbled and fell down, hitting his head on the pavement. DSUF #7. After Palacios fell, he became unconscious, but no one at the scene observed any signs of trauma, such as blood, scratches, cuts, or bruises on Palacios. DSUF #8. Officer Russo called for an ambulance following the incident. Def. Ex. A(6) at 31:20–22. The ambulance never responded to Officer Russo's call, and Russo did not make a follow-up call because it appeared that Palacios was uninjured. Def. Ex. A(6) at 37:21–38:16.

Palacios was handcuffed while on the ground and placed under arrest for public intoxication pursuant to California Penal Code Section 647(f). DSUF #18. Oakland Police Officer Tim Bergquist ("Bergquist") arrived at the scene and transported Palacios to Oakland City Jail. DSUF #21. Bergquist was not told that Palacios had fallen or that Palacios had been unconscious prior to Bergquist's arrival. DSUF #24. Palacios was talkative during the drive to jail. DSUF #26.

Once Palacios arrived at Oakland City Jail, the correctional officer who processed Palacios and signed the admission observation sheet noted that Palacios had no visible signs of trauma or injury. Def. Ex. A(7); DSUF #11. Palacios was placed in the "drunk tank" area of the holding cell at approximately 2:00 a.m., on November 23, 1995. At 10:35 a.m., a correctional officer unsuccessfully attempted to wake Palacios. Because he noticed what appeared to be blood on the floor of Palacios' cell, he summoned the jail nurse to evaluate Palacios. When the nurse was unable to revive Palacios, she determined that Palacios should be examined by a physician and immediately made arrangements to transfer Palacios to Alameda County Hospital. The examining physician at Alameda County Hospital determined that Palacios was suffering from an epidural hematoma. Decl. of Dr. Laslow Tamas ("Tamas Decl.") at ¶ 5.

Plaintiffs filed this action against the City of Oakland and Oakland Police Officers Martin Hughes and Tim Bergquist, alleging claims under 42 U.S.C. § 1983 and state law. The First Amended Complaint alleges that as a result of the fall, Palacios now suffers headaches, memory loss, and back and neck pain. On March 21, 1997 defendants filed a motion for summary judgment.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses which demonstrate the absence of a genuine issue of material fact. *Celotex*

---

1. Plaintiffs have submitted a Separate Statement of Uncontroverted Facts ("PSUF"), indicating which facts are disputed and which facts are undisputed. A number of the "disputes" concern not the facts themselves but the defendants' characterization of the facts. *See, e.g.,* DSUF #8. The facts cited as "DSUF" are undisputed for all substantive purposes (i.e., characterizations of facts may be disputed but underlying facts are undisputed).

*Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the non-moving party's case. *Id.* If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "*specific* facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(e).

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). The evidence presented by the parties must be admissible. Fed. R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir. 1980).

## DISCUSSION

### I. *Discovery Disputes*

As a preliminary matter, plaintiffs have identified three discovery disputes, which must be resolved before the Court rules on

defendants' motion for summary judgment. Plaintiffs contend that: (1) defendants failed to comply with their obligations of initial disclosure under Rule 26, (2) defendants improperly withheld documents pursuant to the attorney-client privilege, work product privilege, Penal Code §§ 832.7 and 832.8, and Evidence Code § 1040, and (3) defendants improperly destroyed a police radio tape of the November 22–23, 1995 incident involving Palacios. Each of these contentions will be addressed in turn.

### A. *Rule 26 Initial Disclosures*

■ Plaintiffs allege that a number of documents were not disclosed by defendants, as required by Federal Rule of Civil Procedure 26(b), until defendants filed their motion for summary judgment.[2] Defendants respond that these documents did not appear relevant at the time defendants made their initial disclosures and that defendants disclosed the documents once their relevance became clear. Plaintiffs have not demonstrated any prejudice from defendants' delay in disclosing the documents, nor have plaintiffs provided evidence of improper motive on the part of the defendants. As such, the Court declines to continue this matter or to sanction the defendants for failing to disclose these documents earlier.[3]

### B. *Documents Withheld on Ground of Privilege*

Plaintiffs assert that defendants have failed to disclose a number of material documents on the ground of privilege (i.e., attorney-client privilege, work product privilege, Penal Code §§ 832.7 and 832.8, and Evidence Code § 1040). Plaintiffs argue that these documents are not in fact privileged and must therefore be disclosed. In response, defendants state that no documents were actually withheld from plaintiffs; defendants' assertion of privilege was merely a "precautionary" measure.[4] Because all of the docu-

---

2. Plaintiffs do not identify which documents were disclosed late and when the documents were disclosed.

3. This case has been set for trial twice before and continued with plaintiffs' concurrence or at plaintiffs' request.

4. All the documents were disclosed to the plaintiffs with one exception. On March 24, 1997, defendants provided plaintiffs with an index of departmental publications relating to canine usage; defendants did not disclose the actual publications. Defendants assert that plaintiff could have obtained copies of these publications if

ments appear to have been disclosed, there is no dispute left to be resolved.

## C. *Radio Tape*

■ Finally, plaintiffs assert that defendants improperly destroyed a police radio tape of the night in question in this litigation. Defendants state that the police radio tape was destroyed 120 days after the incident pursuant to standard police procedure (i.e., tapes were destroyed in Feb. 1996). Defendants emphasize that the instant case was not filed until March 26, 1996 and that defendants were therefore under no obligation to preserve the tapes at the time the tapes were destroyed. Because the plaintiffs provide no evidence to the contrary, no adverse action needs to be taken against the defendants. The Court will now consider the merits of defendants' motion for summary judgment.

## II. *Section 1983 Claim of Edward Palacios*

### A. *Officers Hughes and Bergquist*

Palacios makes three claims against Officers Hughes and Bergquist. He alleges that the officers used excessive force, that the officers had no probable cause to arrest him, and that the officers were deliberately indifferent to his serious medical needs. Officers Hughes and Bergquist, in turn, move for summary judgment on the ground that they are immune from Palacios' section 1983 claims.

■ The defense of qualified immunity protects "government officials ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102

S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The rule of qualified immunity " 'provides ample support to all but the plainly incompetent or those who knowingly violate the law.' " *Burns v. Reed*, 500 U.S. 478, 494–95, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)). "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir.1991).

■ The qualified immunity test is a two-part inquiry: (1) was the law governing the official's conduct clearly established? and (2) under that law, could a reasonable official have believed the conduct to be lawful? *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871–72 (9th Cir.1993).[5] The plaintiff bears the burden of proving the existence of a "clearly established" law at the time of the alleged impermissible conduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). If the plaintiff meets this burden, then the defendant bears the burden of establishing that the defendant's actions were reasonable, even if these actions violated the plaintiff's constitutional rights. *Doe v. Petaluma City School Dist.*, 54 F.3d 1447, 1450 (9th Cir.1995); *Neely v. Feinstein*, 50 F.3d 1502, 1509 (9th Cir.1995); *Maraziti*, 953 F.2d at 523.

### 1. *Excessive Force*

■ Alleged use of excessive force by a law enforcement officer in effectuating an arrest states a valid claim under 42 U.S.C. § 1983.[6] Excessive force claims which arise

---

plaintiffs had so requested but that plaintiffs made no such request. Plaintiffs do not refute this. The Court declines to continue this matter so that plaintiffs can obtain these documents, which were made available earlier to the plaintiffs.

**5.** The first part of the inquiry, i.e., whether the law was clearly established, is a question of law for the court. *Act Up!/Portland*, 988 F.2d at 871. The second part of the inquiry, i.e., whether a reasonable official could have believed the action

taken was lawful, is a mixed question of law and fact. If the essential facts are undisputed, or no reasonable juror could find otherwise, then the question is decided by the court. *Id.* at 872 (citing *Hunter v. Bryant*, 502 U.S. 224, 227–28, 112 S.Ct. 534, 536–37, 116 L.Ed.2d 589 (1991)).

**6.** In Fourth Amendment excessive force cases, the qualified immunity inquiry is the same as the inquiry made on the merits. *See Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1147–48 (9th Cir.), *cert. denied, Yawczak v. Acos-*

in the context of an arrest or investigatory stop of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989); *Forrester v. City of San Diego*, 25 F.3d 804, 806 (9th Cir.1994), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1070 (1995). This analysis applies to any arrest situation where force is used, whether it involves physical restraint, use of a baton, use of a gun, or use of a dog. *Mendoza v. Block*, 27 F.3d 1357, 1362–63 (9th Cir.1994).

■■■ Determining whether the force used to effect a particular seizure is reasonable requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871. Because the reasonableness test is not capable of precise definition or mechanical application, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*; *see also Tennessee v. Garner*, 471 U.S. 1, 3, 105 S.Ct. 1694, 1697, 85 L.Ed.2d 1 (1985). These factors are not exclusive, however, and the totality of the particular circumstances of each case must be considered. *Fikes v. Cleghorn*, 47 F.3d 1011, 1014 (9th Cir.1995); *Forrester*, 25 F.3d at 806 n. 2.

■■■ The reasonableness inquiry in excessive force cases is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to the officers' underlying intent or motivation and without the "20/20 vision of hindsight." *Graham*, 490 U.S. at 396–97, 109 S.Ct. at 1872. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. *See Forrester*, 25 F.3d at 806–07; *see also Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994) (requiring officers to find and choose least intrusive alternative would require them to exercise superhuman judgment), *cert. denied*, —— U.S. ——, 115 S.Ct. 2612, 132 L.Ed.2d 855 (1995).

■■■ Plaintiffs assert that Officer Hughes used excessive force when he shoved Palacios in the chest causing Palacios to stumble and fall.[7] Palacios argues that Officer Hughes' conduct was unreasonable and the use of force against him was unjustified. Pls.' Opp'n at 5. Plaintiffs contend that Officer Hughes could have taken other actions that would not have caused Palacios to fall.

■■■ The issue before the Court is whether Officer Hughes acted within a reasonable range of conduct, not whether in hindsight he might have used a less intrusive degree of force. The undisputed evidence establishes that on the night in question Palacios approached Officer Hughes' car; that the dog in the police car barked and lunged at Palacios; that Officer Hughes stepped in between Palacios and the dog; and that Officer Hughes pushed Palacios once in the chest to move him away from the dog.[8] DSUF #5–6. Officer Hughes, who had been asked by Palacios' family to remove the inebriated plaintiff from their home, reacted to a potentially dangerous situation in a reasonable manner—namely, pushing the intoxicated plaintiff away from a barking and lunging police dog. Having considered the totality of the circumstances, the Court finds that it was reasonable for Hughes to use the amount of

---

*ta*, —— U.S. ——, 117 S.Ct. 514, 136 L.Ed.2d 403 (1996). Therefore, where the law is clearly established, an officer found to have used unreasonable force will not be entitled to qualified immunity. *See id.*

7. Officer Bergquist was not present when the "shoving" incident occurred. In addition, Palacios does not allege that Bergquist used or directed the use of excessive force against him.

Therefore, the Court grants summary judgment in favor of Officer Bergquist on plaintiff's excessive force claim.

8. While the parties dispute whether Palacios was ordered to walk to the car or walked to the car of his own volition, it is undisputed that he approached the car, prompting the police dog to bark and lunge at him.

force that he did.[9] As such, Hughes is entitled to qualified immunity on the claim of excessive force.

### 2. *Probable Cause to Arrest*

Palacios contends that Officer Hughes and Bergquist had no probable cause to arrest him pursuant to California Penal Code § 647(f) [10] and that no objectively reasonable officer would have handcuffed an individual in Palacios' condition.

Palacios argues that because Hughes asked Palacios to leave his home and Palacios voluntarily complied, he was not in violation of section 647(f). However, the Court finds this assertion to be without merit. The facts are undisputed that Palacios was in a public place and that he was intoxicated. California Courts have found that it is irrelevant whether persons under the influence of alcohol came into public places of their own volition. *See, e.g., People v. Olson*, 18 Cal.App.3d 592, 96 Cal.Rptr. 132 (1971). Therefore, Officers Hughes and Bergquist had probable cause to arrest him for public intoxication. In addition, it is standard practice for police officers to handcuff a suspect to eliminate the possibility of an assault when the suspect is taken into custody. *See* Def. Ex. C(3). Palacios does not argue that Hughes or Bergquist used excessive force when handcuffing him; his argument is that he should not have been handcuffed at all. The Court finds that Officers Hughes and Bergquist behaved in an objectively reasonable manner when they handcuffed Palacios pursuant to his lawful arrest. As such, Officers Hughes and Bergquist are entitled to qualified immunity as to this claim.

### 3. *Deliberate Indifference*

Officers Bergquist and Hughes also assert that they are entitled to qualified immunity for their decision to transport Palacios to the Oakland City Jail rather than transporting him to the hospital for medical attention.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.[11] *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986). A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need.

First, the plaintiff must establish the existence of a serious medical need. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992) (citing *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291). The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment indicates that a prisoner has a "serious" need for medical treatment. *Id.* at 1059–60 (citing *Wood v. Housewright*, 900 F.2d 1332, 1337–41 (9th Cir.1990)). A serious medical need is also described as one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Madrid v. Gomez*, 889 F.Supp. 1146, 1256 (N.D.Cal.1995).

Second, the plaintiff must establish that the defendant knew of and disregarded an excessive risk to the plaintiff's health and safety (i.e., the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and the defendant drew the inference) *Farmer v. Brennan*, 511 U.S. 825,

---

9. The question of whether reasonable officials could have believed that their actions were lawful is appropriate for determination by the court if the material facts are undisputed. *See Act Up!/Portland*, 988 F.2d at 872.

10. California Penal Code § 647(f) makes it a misdemeanor to be "found in any public place when one is under the influence of intoxicating liquor . . . ."

11. The Ninth Circuit has determined that the appropriate standard for evaluating constitutional claims brought by pretrial detainees is the same one used to evaluate convicted prisoners' claims under the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir.1996) (standard of deliberate indifference applicable to pretrial detainees' medical claims).

837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). A claim of mere negligence or harassment related to medical problems is not enough to make out a violation of the Eighth Amendment. *See Franklin v. State of Or.*, 662 F.2d 1337, 1344 (9th Cir.1981); *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir.1988).

█ Palacios alleges that as a result of being pushed by Hughes, he fell and developed a serious medical condition (i.e., an epidural hematoma) that required immediate treatment.[12] The undisputed evidence shows that after Palacios fell, he did not display any signs of trauma, such as blood, scratches, cuts, or bruises. DSUF #8. The evidence further shows that on his ride from the Palacios' home to the police station, he was talkative.[13] DSUF #26. Once he arrived at Oakland City jail, the correctional officer who processed Palacios noted that Palacios was conscious and had no visible signs of trauma or injury. Def. Ex. A(7); DSUF #11.

Plaintiffs assert that Officer Hughes should have sent Palacios to the hospital after he became unconscious. Plaintiffs contend that Officer Hughes' refusal to provide Palacios with immediate medical treatment for his injury constituted deliberate indifference. In support of this contention, plaintiffs

submit a declaration from a police procedure/training "expert", concluding that Hughes' conduct rose "easily" to the level of gross negligence and demonstrated a "clear and conscious disregard, reaching in fact, a blatant level of deliberate indifference". Decl. of Frank Saunders at ¶ 9.[14]

█ In order to find that a defendant acted with deliberate indifference to a serious medical need, the government official must be shown to have been subjectively aware of a serious medical condition requiring the official's intervention. *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Mere negligence or gross negligence is insufficient to state an Eighth Amendment claim; the defendants' intent must be tantamount to criminal recklessness. *See id.* at 839, 114 S.Ct. at 1980 ("to act recklessly ... a person must 'consciously disregar[d]' a substantial risk of serious harm."). In the instant case, there is no evidence that Palacios suffered any physical cuts, lacerations, or bruises. Plaintiffs rely primarily on the fact that Palacios became unconscious.[15] The evidence is undisputed that at the time Palacios lost consciousness, he was intoxicated, which could have accounted in part for his failure to regain consciousness immediately. DSUF

---

12. Plaintiffs have presented no evidence to establish "deliberate indifference" on the part of Officer Bergquist. In fact, the evidence shows that when Officer Bergquist arrived at the scene, he was not told that Palacios had hit his head. DSUF #24. The Court therefore grants summary judgment in favor Officer Bergquist on Palacios' deliberate indifference claim.

13. Plaintiffs assert that they do not have knowledge whether these facts are in dispute, citing the Ninth Circuit's decision in *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994). The Court has taken into consideration all of the evidence in the record, including statements of the various witnesses immediately following the incident, statements of Hughes' fellow officers, and records from Oakland City Jail. The evidence substantiates Officer Hughes' account of events. *See, e.g.,* Dep. of Martha Palacios at 90:3–8 (indicating that she did not see any bruises or blood on Edward); Dep. of Marciano Palacios at 51:6–7 (same); Dep. of Officer Russo at 36:25–37:8 (same); Bergquist, at 23:25–24:3 (recounting conversation he had with Palacios on ride to police station); Dep. of Stephen Spears, Ex. 1

(indicating that Palacios showed no signs of trauma, wounds, or illness).

14. Sanders essentially draws legal conclusions based on the facts before the Court. Sanders' statements do not create genuine issues of material fact as to whether Officer Hughes acted with deliberate indifference.

15. The parties dispute how long the plaintiff was unconscious. Officer Russo estimates that Palacios was unconscious between five to ten seconds. Def. Ex. A(6), at 30:11–13 (cited in DSUF #10). Martha Palacios, Edward's half-sister, estimates that he was unconscious for a minute. Def. Ex. A(5), at 77:19–24 (cited in DSUF #10). Mariano Palacios, Edward's uncle, states that Edward was motionless for approximately twenty-five minutes. Pl.Ex. 2, at 50:23–25, Ex. 12, at 51:1–5 (Q: How do you know it was 25 minutes? A: I'm just saying more or less. Q: Are you guessing? A: I'm not guessing, but I can't really say exactly.). The entire incident, from the time of the officers' arrival at the Palacios home to the time that Palacios was checked in at the police station, took approximately 30 minutes, making the 25 minute estimate extremely unlikely.

#3. The evidence further shows that once Palacios regained consciousness, he was talkative and failed to indicate that he was in pain. Def. Ex. B(1), at 35:23–25.

In hindsight, Officer Hughes may have erred in not sending Palacios immediately to the hospital. However, plaintiffs have not presented evidence that Officer Hughes consciously disregarded a condition that was so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *See* Tamas Decl. at 9 ("Based on my review of Mr. Palacios' x-rays and CT scan, as well as his pre-operative, post-operative, and related medical records, in my opinion, *to a reasonable medical certainty,* a lay person, such as a police officer, would not have any reason to believe that Mr. Palacios was in need of medical treatment immediately following the fall or other trauma which eventually caused his epidural hematoma.") (emphasis added).[16] The Court therefore finds that Officer Hughes is entitled to qualified immunity on this claim.

In sum, having considered the arguments presented by counsel and the evidence submitted by the parties, the Court finds that there exists no genuine issues of material fact and therefore grants summary judgment in favor of Officer Hughes and Bergquist on Edward Palacios' section 1983 claim.

**B.  *City of Oakland***

■■■■  By its terms, section 1983 applies to "persons" who, acting under color of state law, violate another's constitutional rights. However, the Supreme Court in *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), held that under limited circumstances a municipality can be sued for constitutional violations under 42 U.S.C. § 1983. In particular, if "the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[,] then the government as an entity is responsible under section 1983." *Id.* at 694, 98 S.Ct. at 2037–38; *see also Collins v. City of Harker Heights, Tex.,* 503 U.S. 115, 121, 112 S.Ct. 1061, 1066, 117 L.Ed.2d 261 (1992). The plaintiff must demonstrate that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Board of County Com'rs of Bryan County, Okl. v. Brown,* —— U.S. ——, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997). A municipality is not liable under section 1983 for acts of negligence by one of its employees or for the occurrence of an unconstitutional act by a non-policymaking employee. *Davis v. City of Ellensburg,* 869 F.2d 1230, 1234–5 (9th Cir.1989). Evidence of mistakes made by adequately trained employees or the occurrence of a single incident of unconstitutional action by a non-policymaking employee is not sufficient to show the existence of a custom or policy that violates constitutional rights. *See Id.; Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir.1989).

**1.  *Failure to Train***

■■■■  The Supreme Court in *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), stated the test for liability of a municipal corporation for the failure to train its employees. The Supreme Court held that a training program is inadequate and section 1983 liability attaches if "the need for more or different training is *so obvious* and the inadequacy *so likely to result in violation of constitutional rights,* that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. at 1205 (emphasis added). In the instant case, Palacios alleges as follows:

> Evidence adduced in this case demonstrates the flaws in these departmental policies [concerning the use of force, handcuffing techniques, and the handling of incidents related to police dogs] to the extent that Police departmental orders and declarations only dwell on the general nature of the department's policies on paper and not the means of enforcement or implementation.

**16.** Dr. Tamas examined and treated Mr. Palacios after he was brought to Highland General Hospital for his head injury.

Pls.' Opp'n at 12. Palacios does not provide evidence of constitutional violations in other cases; he relies on the evidence of injuries adduced in this case.

■■■ The Supreme Court has held that rigorous standards of culpability and causation must be applied to ensure that a municipality will not be held liable solely for the actions of its employee. *Board of County Comm'rs*, —— U.S. at ——, 117 S.Ct. at 1388–89. In particular,

> [t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury could have been avoided if an officer had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.

*City of Canton*, 489 U.S. at 390–91, 109 S.Ct. at 1206. Palacios argues that his injury could have been avoided if Officer Hughes had better or more training. *See, e.g.,* Pls.' Opp'n at 12 ("none of the training bulletins refer to any form of training in the handling of incidents relating to the police dogs."). In addition, Palacios argues that Oakland's "deliberate indifference" can be demonstrated by the fact that his particular constitutional rights were violated.

*City of Canton* makes clear that Palacios' speculative assertions concerning how an improved training program might have prevented his injury is insufficient to support his claim of a constitutional violation. Nor is

evidence of Palacios' isolated injury sufficient to establish that the City of Oakland implemented its training program with deliberate indifference to the rights of its citizens. *See also Board of County Comm'rs*, —— U.S. at ——, 117 S.Ct. at 1389 ("That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not permit an inference of municipal culpability and causation."). Palacios has failed to demonstrate that the City of Oakland's training program is constitutionally defective. As such, the Court grants summary judgment in favor of the City of Oakland and against Palacios on his "failure to train" claim.

### 2. *Failure to Discipline*

■■■ Palacios' claim for failure to discipline arises under the same legal theory as the failure to maintain an adequate training policy. Palacios alleges that the Oakland Police Department did not make a full investigation of the incident leading to Palacios' injury and thus failed to adequately discipline Hughes and Bergquist or provide them with supplemental training.[17] Pls.' Opp'n at 13. However, Palacios has not demonstrated that the City of Oakland adopted a *policy* of not investigating or disciplining police officers. Instead, Palacios has submitted, at best, evidence of *one* such incident where officers were not disciplined. Palacios has submitted no evidence of any other similar incidents involving the City's failure to investigate and/or discipline officers. In the absence of evidence establishing an unconstitutional policy, the Court grants summary judgment in favor of the City of Oakland and against Palacios.

---

**17.** At oral argument, counsel for the plaintiffs cited *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir.1991), for the proposition that a municipality can be held liable for failing to investigate and discipline police officers. Plaintiffs did not cite *Larez*, a 1991 case, in their opposition brief; they raised the case for the first time at oral argument. Because defendants have not had an opportunity to respond to plaintiffs' argument concerning *Larez*, the Court declines to consider *Larez* for purposes of deciding this motion. The

Court notes that even if it were to consider *Larez*, the facts of *Larez* are readily distinguishable from the facts of the instant case. *See id.* at 646 ("pursuant to his two-year study of LAPD complaints, which was unrebutted by defendants, Fyfe concluded that it was 'almost impossible for a police officer to suffer discipline as a result of a complaint lodged by a citizen,' noting that it was as if 'something has to be done on film for the department to buy the citizen's story.' ").

### III. Section 1983 Claims of Palacios' Family

Various members of Palacios' family [18] also assert section 1983 claims against Oakland, Hughes, and Bergquist. They contend that as a result of witnessing the alleged use of excessive force against Palacios, Hughes and Bergquist deprived the family members of their Fourth [19] and Fourteenth Amendment rights. Plaintiffs allege:

> Under the First and Fourteenth amendments (U.S.C.A.), a § 1983 action is available to the relatives of a detainee where the act or [sic—of] the state official has interfered with the right of the family members to associate, communicate and enjoy the company of the individual directly affected. After Edwardo was pushed to the ground, the officers involved physically prevented these family members from attending to Palacios ...

Pls.' Opp'n at 10. The Ninth Circuit has held that a parent can challenge the state's severance or termination of the parent-child relationship under section 1983. The termination of a parent-child relationship interferes with the Fourteenth Amendment liberty interests of a parent in the companionship and society of their children. *Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir.), *cert. denied*, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). Therefore, Estella Palacios would have standing to bring a section 1983 claim if there had been a severance or termination of the parent-child relationship. However, Estella Palacios' claim is based on the assertion that Hughes and Bergquist would not allow her to approach Palacios after he had fallen and been taken into custody. The Court finds that this temporary separation does not rise to the level of a severance of termination of a parent-child relationship. *Cf. Reynolds v. County of San Diego*, 858 F.Supp. 1064, 1070 (S.D.Cal.1994) (mother of decedent shot by deputy sheriff suffered a termination of parent-child relationship and had standing to sue under section 1983). The Court finds that ordering a parent to stay back while police officers attempt to place an individual in custody, even if that individual is injured, is insufficient to establish a termination of a parent-child relationship. Thus, Estella Palacios does not have standing to assert a section 1983 claim.

As regards the claims of the other family members, the Ninth Circuit does not recognize a liberty interest asserted by siblings. *Ward v. City of San Jose*, 967 F.2d 280 (9th Cir.1991). Therefore, the Court finds that Palacios' uncle and half-sisters, Mariano, Elva and Martha Palacios, are without standing to raise a section 1983 claim.

### IV. State Tort Claims

Plaintiffs' complaint also includes state tort claims for assault and battery, false arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, outrageous conduct, invasion of privacy, gross negligence, negligence, and negligent hiring and supervision. Summary judgment has been granted in favor of the defendants on the federal claims under section 1983. Therefore, only state law claims remain.

While the exercise of supplemental jurisdiction is within the sound discretion of the Court, the retention of jurisdiction may amount to an abuse of discretion when all the federal claims are resolved at the summary judgment stage. *Reynolds v. County of San Diego*, 84 F.3d 1162 (9th Cir.1996). Therefore, the Court dismisses plaintiffs' state law claims without prejudice to refiling these claims in state court. *See* W. Schwarzer, W. Tashima & J. Wagstaffe, *Federal Civil Procedure Before Trial* § 2:159, at 2B–49 (1997) ("Any applicable limits on the state law claim 'shall be tolled while the claim is pending and for a period of 30 days after dismissal unless state law provides a *longer* period.' ") (citations omitted).

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court GRANTS defen-

---

18. These plaintiffs include Palacios' mother (Estella Palacios), his uncle (Mariano Palacios) and his two half-sisters (Martha and Elva Palacios).

19. Fourth Amendment rights are personal rights and may not be vicariously asserted. *Crumpton v. Gates*, 947 F.2d 1418, 1422 (9th Cir.1991). Therefore, Palacios' family cannot assert Palacios' excessive force claim.

dants' motion for summary judgment with regard to the plaintiffs' claims based on 42 U.S.C. § 1983. The Court DISMISSES plaintiffs' remaining claims WITHOUT PREJUDICE to refiling in state court.

IT IS SO ORDERED.