Brenda Lee NADELL; Brian Sidney Nadell, Plaintiffs–Appellants,

Hugh M. Davis; Curt Obront; William Whitehead, III; Robert J. Kossack, Intervenors,

v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT; S. Leyba, Officer; M. Etherton, Officer; G. Zeil, Officer, Defendants–Appellees.

Brenda Lee Nadell; Brian Sidney Nadell, Plaintiffs–Appellees,

Hugh M. Davis; Curt Obront; William Whitehead, III; Robert J. Kossack, Intervenors,

v.

Las Vegas Metropolitan Police Department; S. Leyba, Officer, Defendants–Appellants,

M. Etherton, Officer; G. Zeil, Officer, Defendants.

Nos. 99–16383, 99–16556.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 14, 2001.*

Filed Oct. 5, 2001.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a).

Brenda Lee Nadell, Brian Sidney Nadell, plaintiffs-appellants, pro se.

Brian C. Whitaker, Peter M. Angulo, Thomas D. Dillard, Jr., Rawlings, Olson, Cannon, Gormley & Desruisseaux, P.C., Las Vegas, Nevada, for the defendants-cross-appellants.

Before: POLITZ,** KOZINSKI, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

Among other issues, we must decide whether the trial judge fulfilled his *Daubert* gatekeeping role in excluding certain expert testimony.

I

On July 22, 1994, Brenda Nadell drove her sister and young daughter to Michael Laing's residence in Las Vegas, Nevada, so that her sister could interview for a job. At Laing's invitation, Nadell consumed several alcoholic drinks, enough to render her unable to drive. She went into the guest bedroom to lie down, whereafter an altercation between Laing and his ex-wife brought Las Vegas police officers Gregory Zeil and Michael Etherton to the house. Laing invited them in.

In the living room, the officers found broken glass and Nadell's sister and daughter spattered with blood. Etherton asked Nadell's sister to remain in the front room, but she instead took Nadell's daughter into the guest bedroom. Etherton followed her. Shortly thereafter, police officer Steven Leyba arrived on the scene and joined Etherton in the bedroom. Nadell began screaming at the officers. She then

---

** The Honorable Henry A. Politz, Senior United States Circuit Judge for the Fifth Circuit Court of Appeals, sitting by designation.

allegedly attacked Leyba, who, aided by Etherton, restrained her by pushing her up against a wall and wrestling her to the ground. Leyba then arrested Nadell for battery on a police officer.

The Clark County District Attorney's office initially declined to prosecute Nadell. However, on July 25, 1994, Nadell and her husband filed an excessive-force complaint against Leyba with the Internal Affairs Bureau of the Las Vegas Metropolitan Police Department (LVMPD). Leyba notified the DA's office of Nadell's complaint, whereupon the DA filed two misdemeanor battery charges against Nadell.

Nadell filed a complaint in the District Court for the District of Nevada, alleging that the LVMPD, Leyba, and other defendants had deprived her of her civil rights in violation of 42 U.S.C. § 1983.[1] Specifically, Nadell asserted that the defendants had subjected her to false arrest, unreasonable search and seizure, and unlawful retaliation in response to her exercise of her First Amendment rights.[2]

In support of her excessive force claims, Nadell sought to call Dr. Michael Krieger as an expert witness. Dr. Krieger had performed a quantitative electroencephalogram ("QEEG") on Nadell. A conventional EEG monitors and records the brain's electrical activity; the QEEG technique involves the mathematical processing, analysis, and display of digitally recorded EEG data. Nadell contended that her QEEG results supported her claim of physical injury from the force applied during her arrest. The district court granted the defendants' motion to exclude Dr. Krieger's testimony, finding that the QEEG test lacked the requisite reliability.

The defendants moved for judgment as a matter of law on all claims. At the close of the plaintiffs' evidence, the district court granted only the motion pertaining to Nadell's unreasonable search and seizure claim, holding that as she was temporarily present in Laing's home, Nadell lacked standing to bring the claim under the Fourth Amendment.

The jury found that Nadell had not been falsely arrested. However, it found that Leyba had violated Nadell's civil rights by using excessive force in arresting her and by retaliating against her for her exercise of her First Amendment rights. The jury further found that the LVMPD had violated Nadell's civil rights by failing to discipline Leyba for his use of excessive force and by inadequately investigating Nadell's excessive-force claim. It awarded Nadell nominal damages of $1.00.

The defendants offered renewed motions for judgment as a matter of law on the retaliation, excessive force, and failure to discipline claims. Nadell moved for a new trial on damages and on the unreasonable search and seizure claim. The district court denied each of those motions, and this appeal and cross-appeal followed.

## II

Nadell argues that the district court abused its discretion in excluding scientific testimony concerning QEEG tests under Federal Rule of Evidence 702. A district court has broad latitude in deciding how to determine reliability, *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), and its decision to exclude expert testimony is reversed only if "manifestly

---

1. The complaint also named Nadell's husband and daughter as plaintiffs. Their derivative claims are not relevant to either the appeal or cross-appeal.

2. The allegations of misconduct involving the defendants other than the LVMPD and Leyba are not before us.

erroneous," *United States v. Hankey,* 203 F.3d 1160, 1167 (9th Cir.2000) (quoting *General Electric Co. v. Joiner,* 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)) (internal quotation marks omitted). Here, the district court held a two-day evidentiary hearing and found the QEEG test to be "error prone" and inadequately subjected to peer review. The court also found that Dr. Krieger's testimony would not be helpful to the jury because Nadell had suffered serious head injuries as a child and Dr. Krieger's QEEG testing could not distinguish between those previous injuries and any injuries incurred during the arrest. The court's conclusions find considerable support in the record of the evidentiary hearing, including testimony by the leader of a joint task force of the American Academy of Neurology and the American Clinical Neurophysiology Society that the QEEG technique's subjectivity and tendency to produce "false positives" have kept it from achieving general acceptance for the clinical diagnosis of closed head injuries. The district court properly played its "gatekeeping role," *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and did not abuse its discretion in excluding QEEG expert testimony.

### III

■ Nadell asserts that the district court erred in granting defendants' motion for judgment as a matter of law in regards to her claim of a civil rights violation under 42 U.S.C. § 1983 for an unreasonable search. To invoke Fourth Amendment protection for a search, a person must demonstrate a "legitimate expectation of privacy." *United States v. Gamez–Orduno,* 235 F.3d 453, 458 (9th Cir.2000) (quoting *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)) (internal quotation marks omitted). In another's home, an overnight guest has a legitimate expectation of privacy, *see Minnesota v. Olson,* 495 U.S. 91, 96–99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990), but an individual merely "present with the consent of the householder" does not, *Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). The district court did not clearly err in finding that Nadell was not an overnight guest but, rather, that she was merely present with the consent of the householder and had formed no intention to remain overnight—nor, indeed, longer than was necessary to regain sufficient sobriety to drive. Accordingly, Nadell did not have a legitimate expectation of privacy. Therefore, the district court properly granted defendants' motion for judgment as a matter of law.

### IV

■ Nadell argues that the district court abused its discretion by instructing the jury as to the availability of nominal damages. Where a constitutional violation has occurred and a plaintiff fails to prove actual damages, nominal damages must be awarded. *George v. City of Long Beach,* 973 F.2d 706, 708 (9th Cir.1992). The district court properly instructed the jury as to the availability of nominal damages, deriving its instruction from the Ninth Circuit's Model Jury Instructions. *See* Model Civ. Jury Instr. 9th Cir. § 11.4. The jury's award of nominal damages was supported by substantial evidence showing that the injuries sustained by Nadell were self-inflicted or a result of her own violent behavior. Thus, the award of only nominal damages was proper, pursuant to the verdict from the properly instructed jury.

### V

Cross-appellant Leyba asserts that the district court erred in denying his motion for judgment as a matter of law on Na-

dell's claim of excessive force. Substantial evidence supported the jury's finding of excessive force; the plaintiff presented corroborated testimony that Leyba repeatedly hit Nadell, pushed her against a wall, and wrestled her to the ground. The district court therefore properly denied defendant's motion.

## VI

■ Leyba also argues that the district court erred in denying his motion for judgment as a matter of law on Nadell's claim of First Amendment retaliation. Substantial evidence was introduced at trial on this point, enough for the jury to find that Leyba retaliated against Nadell for her complaint to the Internal Affairs Bureau and that such retaliation caused her to become the subject of a criminal action. Leyba's liability is not diminished by the district attorney's office's role in bringing the criminal action because substantial evidence supported the jury's finding that Leyba's actions proximately caused Nadell's prosecution, where the district attorney's office had formerly decided not to bring prosecution. *See Borunda v. Richmond,* 885 F.2d 1384, 1390 (9th Cir.1988) (holding that police officers are not insulated from civil liability for a prosecutor's decision when the decision was not made by the prosecutor's "independent judgment"); *Smiddy v. Varney,* 665 F.2d 261, 266–67 (9th Cir.1981) ("[A] showing that the district attorney was pressured or caused by the investigating officers to act contrary to his independent judgment will rebut the presumption [of independent judgment].").

■ Further, Leyba is not entitled to qualified immunity if the right infringed was "clearly established at the time of the alleged violation," *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Conn v. Gabbert,* 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)) (internal quotation marks omitted), and if a "reasonable officer" could not have believed his conduct was lawful, *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993). The right to be free of government retaliation for the exercise of First Amendment activity, a category within which the right to petition the government falls, was clearly established at the time Nadell filed her complaint with the LVMPD, *see, e.g., Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986), and no reasonable officer could have concluded that retaliatory conduct of the sort the jury found occurred in this case was lawful. Therefore, the district court properly denied Leyba's motion for judgment as a matter of law.

## VII

■ Cross-appellant LVMPD argues that the district court erred in denying its motion for judgment as a matter of law on Nadell's claim of municipal liability for Leyba's use of excessive force against her. Municipal liability is only appropriate where a plaintiff has shown that a constitutional deprivation was directly caused by a municipal policy. *Oviatt v. Pearce,* 954 F.2d 1470, 1477–78 (9th Cir.1992). Such a policy must result from a deliberate choice made by a policy-making official, *id.,* and may be inferred from widespread practices or "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded," *Gillette v. Delmore,* 979 F.2d 1342, 1349 (9th Cir.1992). "A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233 (9th Cir.1989).

There was no evidence introduced at trial to establish that the use of excessive force was a formal policy or widespread practice of the LVMPD or that previous constitutional violations had occurred for which the offending officers were not discharged or reprimanded. Thus, there was not sufficient evidence to sustain the jury's finding of municipal liability. *See id.* at 1235 ("[Plaintiff] failed to present any evidence of other acts by . . . police officers to prove that the use of excessive force is a widespread practice or custom in the city. Thus, we can[not] infer . . . that the use of excessive force is sufficiently pervasive to rise to the level of a custom. . . ."). Therefore, the district court erred in denying the LVMPD's motion for judgment as a matter of law on the issue of municipal liability for excessive force. The district court's judgment against the LVMPD on this count must therefore be reversed. AFFIRMED in part and REVERSED in part.